The first case on our docket is BP Exploration and Production, Incorporated v. Wilcom. Your Honor, the question before this court is who should be responsible for making a mistake. The entity or person who made it or the person who suffered the loss. BP is the party that made the mistake in this case and it stands in the shoes of the claims administrator in this instance. It has admitted in its brief that a mistake was made but tries to shift the blame on the claims. Louisiana Civil Court article, I'm sure I'm telling you the basics. 2315 says that every act of man, whatever that causes damage to another, obliges him, by whose fault it is, to repair it. And BP is the one who made the mistake. But before I go to the facts of this case, I'd like to briefly discuss the wetlands claims process because I do not think there are any wetlands claims cases before this court except maybe cases involving excluded classes such as oil companies. I'm not aware of any claim that's similar to this. Before you do talk about the facts of how the online portal works, how can we deal with the fact that these come from your brief and maybe you're about to tell us and not from the record in the case? Wait, I'm sorry, the what? Many of the key facts, including how the online portal works, don't seem to be in the actual record before us. Am I wrong on that? Well, the settlement program and the portal, that's a public record. I mean, I don't know how I could put the online portal. Okay, it just seems that it was in your brief but not in the record below, but perhaps I'm wrong on that. And so maybe you want to address that first before you tell us how it works. Well, the fact that it's online, the only thing that's relevant with regard to that is how it blocks the claim from being submitted. But even if you submitted it as a paper, it still would block it. The claims administrator would still block it. The online makes it easier, makes it immediate, but it really doesn't change the fact that if you submitted these claims in paper and simply scanned them and submitted them in that way or handed them in, they still would not have been deemed submitted. As a matter of fact, that occurred to me, that it did happen. When I realized the mistake and they wouldn't allow me to submit the claims, the computer kept saying ineligible or not, you can't file a claim, I finally just submitted paper forms. I did that in October 2014 after trying to get some response from the liaison person and from the claims administrator's office, and they never, ever admitted to me that I had tried to submit these claims and that they were ineligible. They simply said 180-day rule applies and you can't submit a claim. But I did upload the paper files, but the claims administrator still lists them as not submitted. So I don't want to get hung up on the online because that really doesn't change things. It just makes it a lot easier for somebody to do it. But let me go back to the wetlands process for a second because I think that's very important. The difference between the wetlands claims and all other claims that I'm aware of, and maybe coastal property claims, maybe in this category, but certainly the business claims which you've seen, numerous litigation, individual economic loss claims, is that BP has the database. BP compiled the database. In the two years after the spill, they spent millions of dollars attempting to block the oil, of course, from coming to the land, using satellite imaging to show where the oil was, clean it up, et cetera, and then going to the parishes, the coastal parishes, and getting the database of the owners of the land that's right along the coast. And when the claims settlement was entered into under Exhibit 12A, it said that BP developed this database of potentially eligible parcels and that it is the best available data and presumed to be correct, presumed to be correct. So when you went to submit a claim, you would submit the claim by tax parcels because that's the only thing that you had. This is more like duck hunting land, that this is truly wetlands that we're referring to, and you get a tax bill. So what I did is I had seven tax bills for these particular clients, and I submitted them on the portal. But again, it really doesn't matter whether you submitted it on the portal or submitted them in. Submitted all seven, and then what happened? I submitted seven in July of 2012, and the system said the two were eligible and five were not. The system, meaning the computer kicked them back with that note. Right. It said not in a claim zone is the terminology they used. So then you proceeded with the other five but not those two. I proceeded with the two and not the other five. The other way around. That's exactly right. And so what eventually occurred. Are these adjoining tracts? No, no, no. My dad was a land lawyer and did a lot of work in Plaquemines Parish. That's how he made his living. And the titles in Plaquemines Parish were sloppy, very poorly done, and there was a lot of – when oil companies became interested in the 50s and the 60s, there was a lot of questions about how you become the owners of this. People would buy tracts of swamp land that the only reason they bought them was hoping that the oil companies would be interested in drilling on them. And so that's how we acquired these lands. When my dad passed away, we probably had, I don't know, 15 parcels like this and seven in Plaquemines and St. Bernard and some other ones that wouldn't even be. And so they're all undeveloped tracts, all with just townships, ranges, and sections. That's all they are. You later determined that the parcels that had been rejected should not have been rejected. That's exactly right. Is there any controversy as to the fact that they were improperly rejected, that they should have been allowed? Well, it's controversial only in the sense that it was totally hidden from me, totally stonewalled by the claims administrator's office until – and I will give PP's lawyers credit for this. When we got up to the Court of Appeals, they admitted that they were erroneously rejected. In their brief, they admitted it. That was the first time that was ever admitted to me. Now, of course, I knew for a fact at that point that they were erroneously rejected because on 1460300, they've been paid. The other three-quarter owners have been paid. On the other one, nobody's been paid. You have a situation where there is a time limit within which to submit claims, and you submitted within the time limits all those claims, but some were rejected erroneously, and then when that error was corrected, they imposed a time limit. Is that it? That's close but not exactly right, and this is the distinction that's very, very important. There are some documents in front of you, and I'm going to direct you to that. They are the instructions to submit the wetlands claims. The difference between wetlands and the other claims is you do not submit a claim if you are told the parcel is not in a claim zone. You do not submit a claim. You cannot submit a claim. In my brief, I said there was no point. I direct you to page 5, and there's two versions. If you look at the bottom, which says V1 and V2, and V1 was handed out at the time that this was all going on. I went to a seminar. They said here's the literature. You could go on the computer portal or the claims office, whatever, and get these, and they were prepared, I'm sure, by BP in concert with the other folks. Your argument is you should be excused from the time bar because you were misinformed by the— Right, and I could not submit a claim. That's the important thing. Well, you could if you had contended, yes, it's covered. I mean— I could if I had the documents that I did not have. You didn't submit a—all right. You cannot submit a claim. That's what page 5 says. Unless you can prove that you're in the wetlands. Right, and the way you prove it is tax bill, which I used and they denied me, or survey, which I did not have. But you didn't—when did you first file that claim with the tax bill? Yeah, but that's just the point I'm making. You test the thing. You ask it. Can I submit the claim? I did that in July of 2012. Okay? Two were eligible. I submitted the claims on those. You didn't submit a claim. You submitted a request to determine whether they were eligible. Correct, but when they said they were eligible, I then submitted the claim. That's the— Okay. Correct. So at the end of July 2012, I had two submitted claims. Right. And when did you first submit the claims on the other five? On the other five, to this day they're not submitted because they won't let me submit them. That's what I'm trying to tell you. They won't deem them submitted. I uploaded on paper files the two that I've realized are eligible in October of 2014. But they still say they're not submitted. That's the issue right now. They say you can't submit them. And on the other type of claims, economic laws, individual economic laws, you submit the claim. They deny it. At that point, then you can appeal it through the appellate process. But if the claim is not submitted— And you were paid on the other two claims? I got paid on one claim, one small claim in March and April of 2013 so that the 180-day rule expired in September, October 2013. But why didn't the appellate timeline under the settlement agreement to appeal apply? Once they repeatedly refused to accept your submissions, why shouldn't you have appealed at that point? That's what's so crazy about this. You cannot go through that process unless your claim is submitted and denied by the claims administrator, and then you appeal. They would not let me and still will not let me submit the claim. Did you try to submit an appeal? I tried to submit a claim. But did you try to submit an appeal? They said I cannot appeal it because it hasn't been denied. But did the answer no, you didn't try? Yeah, I did try. I said I want to appeal these, and the liaison person said you can't. Where is that in the record? Or when is the date that you did that? Well, June of 2014 is when I tried to do it, and I wrote to the attorney for Juneau and said, you know, I'm being denied, and they just never responded, and I have documents that I gave to the ---- So that was June of 14? Yes. I'm sorry, go ahead. That's the first time you tried to appeal? June of 2014 is when I realized the problem, and I attempted to remedy the problem, and I was told I cannot appeal because they're not submitted. But did you say I'm trying to appeal this, and they said your appeal is denied? No, they said you can't appeal it until you are denied, and you have to submit the claim. That's why we're here. My point ---- I mean, I know it sounds crazy. I mean it. You cannot, you have to be submitted to be denied, and we're not letting you submit. That's more than a year after you were paid on the other parcel, so we're way past 180. Yes. And it's two years after you submitted the claims and were told these are ineligible. Two years, 23 months after I first tried to submit these, I found out that they were in fact eligible. Why didn't you have to go within 180 days of July 2012? No, because ---- To try to get your documentation to show it were within. All right. To go in the timeline. I submitted the claim, two claims in July of 2012. I received eligibility notices on those two claims, on one of the two claims, in like February or March of 2013. We accepted it. So the 180 days started to run at that point when we accepted those claims. One of them got hung up, but the other one has still never been paid, which I wish, of course, the one that was paid hadn't been, and we wouldn't be having all this problem. But you knew in July 2012 that five were not considered in the claim zone. Yes. So that's why I'm saying why didn't you go within the 180 days from 2012 to provide your supporting? Because I didn't have it. I have my time on it. I cannot. You had to submit an eligibility parcel challenge form. Or June of 2014. Because they wouldn't let me submit that. That's what I'm trying to tell you. They won't let you submit it. But I'm not talking about the appeal of the thing. I'm trying to talk about the documentation that would support that you were in the claim zone. All right. Let's go back to July. I've got a whole timeline. July 2012, you're told that they're not in the claim zone. That's right. And I used the tax parcel bill number to test it. And that is one of the documents that they use. And they said you're not in a claim zone. You cannot submit a claim. And you didn't go and gather materials timely, though, to say, yes, you're right. There was no materials for me to get. I didn't have a survey. I didn't have proof that actual oil had gotten on the property. It was 26 months after the spill. I didn't have proof. This land is very remote. You have to get in a boat to get to it. I'm relying on them. And the claims process tells you that. We have the best available data. This is presumed to be correct. And this was a clerical error on their part. There was no question that these parcels were in the claim zone. The problem was they didn't have the tax bills for all of them. And so it's just a clerical error. Well, that's right. But even in a limitations case, the person who is wronged has typically two years, three years to gather your information and get to say, hey, you made a mistake. And I'm entitled to relief. I mean, you were paid March and April 2013. That's what kicked off the 180-day time period. But you had from July of 2012 to 180 days past the March-April 2013 date to say, hey, I think my land was ‑‑ I think there's a problem here. But I didn't know it. Well, you have your own reasonable ‑‑ they've told you no, you're not eligible. Right. And you're on notice that if you disagree with that, you've got to go find out and prove to them, no, you're wrong. And the tax bill is all I had. Well, if I went out ‑‑ It's not all you had because at some point you talked to the co‑owners and found out that they're ‑‑ But it was too late. Well, you could have talked to them sooner. No, I didn't. This is just it. The co‑owner who told me about it, I did not know he was a co‑owner. I inherited this property. I was a one‑quarter owner. The co‑owner ‑‑ You knew you were a one‑quarter owner. I mean ‑‑ My family was a quarter owner. The other three quarter owners, I didn't know who they were. He called me on a ‑‑ You can't go to the deed records or the tax rolls? No, no, it's not set up that way. No, I just, okay, I'm a quarter owner. This is my parcel. And you can't go see ‑‑ you have no way under Louisiana law finding out who the other co‑owners of your own parcel are? As a practical matter, no. I don't know the answer to that. I know that I went down to the records and I own a quarter of this. How did you find out about the other owner? Because HBS was in his 90s, who was a friend of my dad's, called me on a minor thing about how, you know, your property taxes are on this were due and you didn't pay them. And he says, by the way, you know, I got paid on this parcel. I thought you said you didn't know who he was. No, no. HBS, I knew HBS. I did not realize that he co‑owned a quarter of this land with me. I did not know that until he told me that. But I knew who HBS was, sure. Yeah, he called me and told me. Yeah. I'm sorry. He told you he had gotten paid. Yeah, I mean, yeah, I fell on the floor. So you didn't know that you were a co‑owner with HBS? Correct. I didn't know I was a co‑owner with HBS. Why did he bring that up in the conversation? I'm just curious. Because he got paid. Well, how did he know you were a co‑owner and you didn't know he was a co‑owner? Let's go back to the 1970s. HBS was friends with my dad. There's the other guy named PG. I'm trying to keep them identities confidential. He knew my father as well. They did deal with real estate, this swamp land in Clackamas Parish. PG bought the land. He sold one quarter to my father and one quarter to HBS. That's back in the 1970s. On the other parcel, what happened is there was a title dispute between the two co‑owners. My father was hired by one family to help straighten out the title dispute. They settled it, and my father became a 1‑6 owner, and the other parcels were divided up among the other owners. That's it. I did not know those folks. I didn't know them at all. I know now who they are. And again, with the 1460300, I did not know who the co‑owners were. I just knew it was a quarter parcel. And along with the other five parcels, which I don't know who the co‑owners are, the one I got paid on was one in which my father owned 100%. So there was no ‑‑ Right. There weren't multiple tax bills. There was just one. That's right. Right. And yours was the first, and so you got paid first and only. Right. And I think, and the reason why I'm showing you these page 5 instruction forms is because the page 5, it says if you're declared ineligible, you cannot submit a tax parcel. You cannot submit a claim, by the way. You cannot. And you have to have these very limited things, and it's either the tax bill, which I submitted, or a survey, not both, or actual proof of oil, which is ‑‑ I would have had to have been out there in 2010 or 2011 to find that there was oil on the land. I didn't know that ‑‑ Well, in the next paragraph, it first says, if the parcel is not included in the Wetlands Real Property Claims Zone, which yours is, it is preliminarily not considered eligible. Now, that brings up why I showed you these two instruction forms. The one you're reading now is version 2, which is on the portal as we sit here today. They added the word preliminarily in December of 2013, as best I can tell. That was the change. What about the next paragraph? If you disagree with the Wetlands Real Property and think your parcel should be included, you may request a review of the eligibility designation. Right, but you cannot submit a claim. But you can request a review of the eligibility designation. And give them the very limited documentation. You can't just ask for a review. You have to give them a survey, which I did not have, or a tax bill, which I submitted and they denied, or proof of oiling, which was 26 months after the spill, and it was all cleaned up. I didn't try to go out there. Well, you could have gotten a survey, couldn't you? No, I didn't have a survey. You could have got ‑‑ Can you get it? Could you have gotten a survey? The survey would have cost thousands of dollars. Well, you've got a $200,000 claim they paid. I didn't know that at the time. And now they admit that this thing should have been eligible. And the requirements are tax bill or survey. It doesn't say tax bill and survey. I submitted the tax bill. Did you disagree and request a review of the eligibility designation? I did not request a review of the ineligible designation. I did not. What's the amount of the claim? On 1460300, it's $299,000 for the four of us together. On 1610194, I do not know yet. It's still, you know, either. And what were you paid in March and April of 2013? The four of us together were paid $15,900. In other words, nothing compared to 1460300. And the reason why I showed you those two instructions, okay, version one says you cannot submit a claim for it, which is what I dealt with. I cannot submit a claim for it. And that's why we're here today, because I didn't submit a claim for it. Version two, after my eligibility ran out, they added the word preliminarily. Now, what's that telling you? It's telling you that they knew good and well that their database was. . . But it does say if you disagree, you may challenge the eligibility designation. Right, and if you disagree, it's very limited on what you can do. You have to have a survey. And you didn't want to go pay for a survey. All right, let's just talk about 1610194. That went for a minute. That's 1,500 acres. That would have cost me $100,000 to do that survey. I had five parcels that was ineligible. I didn't know which ones should have been eligible. As a matter of fact, one of the ones that's still considered ineligible looked like one of the best ones. It was sticking way out in the water. Let me ask you a question. Yeah. The other owner that you didn't co-own, that you were unaware of, submitted a claim and was paid. Right. How did he get through the claims process if this parcel was outside of it? Because it wasn't outside. That's the whole point. I understand. But, no, they made a mistake. If the computer is doing it, I didn't understand why it would reject your submission on the parcel and honor someone else's. Because when they're compiling the database, they found the tax bill for HBS. They put that in. It was an eligible parcel. They put that in. They did not put in, apparently, the tax bills for the other two owners, myself and P.G. He submits a claim in 2013, I think, and they say you're eligible. P.G. and myself put in the claims for the same two, and they say you're ineligible on the same land. What happened to P.G.'s claim? P.G. knew that HBS, that P.G.'s family was friends with HBS. They knew he had been paid. So they challenged it, and after eight months, they finally reversed and said, yeah, you're eligible. But he didn't have a survey. He didn't have proof of oil, and he just said my co-owner got paid. Well, he had a tax thing. Well, I had the tax thing, too. Well, but I think if you'd taken it into them and said this is my parcel, the problem is you didn't challenge the eligibility and you were entitled to. It seems like you could go to the tax office and say, what are the other tax numbers for this parcel? I am not aware of the ability to do that. I, to this day, do not know that. All I knew is I'm only one quarter. Plus, the other thing is I didn't know. This is the whole point. Obviously, I wanted to submit the claim. You can look at the thing and see I wanted to submit the claim. They admit I tried to submit the parcels. I mean, it was their mistake. They had the inadequate database. I just don't understand how am I supposed to realize this. I didn't know who the other co-owners were. I didn't know which parcels were eligible. Okay, what is the outside limitations on this? If you'd never talked to HBS, if you'd never talked to him, how long do you think you would have to file the claim? It would have expired because of the 180-day rule. I mean, what we hear about is 180 days. I'm saying you're saying we shouldn't enforce the 180-day rule. And if we agree with you, what is the outer limits of when you would have? When I could have filed it? No. What are the outer limits? Here's a hypothetical. Let's say you never talked to HBS. Right. You didn't find out from HBS he'd been paid. Right. What are the outer limits that you have to find out and make a claim? It would have been June 8, 2015. But you don't enforce the 180-day rule. If you're not going to enforce that, why would it be that day? Because that's the last day to file a claim. For all the claims. For all the claims. For everything. Okay. Right. So if the 180-day rule had not kicked in in June of 2014 when I did find out, this would have been gone through the process? When you had the same argument that, hey, I tried to file a claim and you rejected it, so I should be included indefinitely. I mean. That is a hypothetical, which I realize that. And I'll tell you something. I think there's people out there who are in that boat. Because the claims administrator has gone on record. He's admitted public policies that hundreds, literally hundreds of parcels that he said were eligible, he is now saying were ineligible, meaning he made mistakes. And I know of several that were listed as ineligible originally and should have been eligible. And why would the claims administrator in late 2013 add the word preliminarily to the instruction thing, which, you know, when the first instructions came out, it didn't say preliminarily. In fact, if you read Exhibit 12A, it goes on and on and on about how we went. This is the best database. This is presumed to be correct. This is the best parcel boundary database. Strictly discouraging you from filing a claim unless they're saying you're eligible. What are parcel boundary database? How does the tax office know where your land is? The tax office, when you buy the land, you bought it in township ranges and sections. So somebody who is knowledgeable about what township ranges and sections, well, the tax office knows because that's when you bought the property. So it just bills you on that land. I mean, they know where it is roughly, of course. Sure, they could find it for you. Yeah. And we've been paying taxes on them for years. And it's listed as swamp. I mean, the taxes are nominal. You're talking about 2013. No, I'm just saying you have some idea of where it is. I mean, I'm just— Yeah, I had—yes. Did I have a rough idea of where these are located? Yes, I did have a rough idea of where these are located. But if they told me I didn't get oil on it or that I'm not eligible, then I didn't have any basis for disputing it because by the time this claim settlement was announced in May of 2012, that was 25, 26 months after this bill. We have your argument. You save some time for that. I'm sorry, what? We have your argument. All right. Thank you. Good morning, Your Honors. May it please the Court. I'm Jeff Clark from Kirkland & Ellis here on behalf of BP. Let me try to cut through this on the issue that Judge Higginbotham was asking about. How did the other co-owner claimants navigate the process? And the evidence of record shows that the heirs of PG successfully navigated this process, and it's really not that hard. If you look at Exhibit 12A, Section 1D3, you see the information that Mr. Schoenberger was referring to about this is the best available information in the database, and it says the database is presumed to be the best available evidence. I think any lawyer would understand that means that it's not dispositively established. It's just something that can be – it starts out as being presumed, but it can be overcome. And indeed, the provision in D3 continues to say, however, that presumption may be rebutted as outlined in Sections E, F, G, and H below. And actually, if you look at the new document that Mr. Schoenberger did not put in his briefs but relies on today, I think you'll see how easily this falls apart. Do you want us to look at this even though it's not in the record? I think, Your Honor, I do agree with you that there are lots of things that Mr. Schoenberger is pointing to that aren't in the record, but I would submit to you that the information from the settlement is on the web. I think it's judicially noticeable. So let me point you to this set of instructions, which I think any lawyer— The new or the old? It doesn't matter, actually, because the main thing that Mr. Schoenberger has missed is if you look at Section 5, which begins on page 11, you'll see the detailed instructions and document requirements for completing and submitting the Wetlands Real Property Parcel Eligibility Request Form. And this is the very form that the heirs of PG submitted on a timely basis when they got the same response from the computer database that Mr. Schoenberger for his clients and himself did, which was parcel not in zone. When you got that response from the computer, this is the form you were supposed to submit. They submitted that form, the heirs of PG. They got paid. They don't have a time bar problem. Mr. Schoenberger didn't read the instructions and didn't see how the whole set of forms here fits together. If you look at the third paragraph under Number 5, Section 5 on page 11, you'll see it says, to request a review of the designation of your parcel as not within the Wetlands Real Property Claim Zone, fill out the Parcel Eligibility Request Form, which is precisely what the heirs of PG did and Mr. Schoenberger and his clients did not do. Detach it from the Real Property Claim Form, sign it in Section E below, and submit the Parcel Eligibility Request Form instead of the Claims Form. If your parcel is then added to the Wetlands Real Property Claim Zone, you may then submit a Wetlands Real Property Claim Form. So if you review the entirety of the document that Mr. Schoenberger is now pointing to as pivotal, and as I think any lawyer would, you would see that if you got this automatic rejection notice because the database, you know, missed information or was in error in some fashion, what you had to do within the applicable time periods was file this form, this Real Property, Real Parcel Eligibility Form. That's precisely what the heirs of PG did, and Mr. Schoenberger and his clients didn't do that. That's a procedural default right now. What did they submit? They submitted this form. What did they supply? What information did they supply? I think they must have supplied their tax record information. No, not what you think they must have done. What did they submit? There's no information, going back to Judge Helrod's question, in the record about what they submitted. But he didn't even submit the form, right? Yes, that's correct. So Mr. Schoenberger and his clients didn't submit this form. He says that he concedes himself that his co-owner submitted this form, but there's no record evidence that that happened because Mr. Schoenberger didn't go and try to get the form. And this form is how you fix the problem in the directions, and it was at the time. It's not a new form based upon the new addition of the word. That is a de minimis change, I think, that clarifies the fact of how the claim form fits together with this challenge form. So, of course, you can't submit the claim form, as it says on page 11, unless and until you get a reversal of the information in the administrator's database. So this claim, just at bottom, was procedurally defaulted on. It was not acted on within the applicable time period of the six-month rule. And if you look again at section 1D3 of Exhibit 12A in the settlement agreement, it specifically tells you, and it tells you through the related subsections, that this database, look at subsection F, for instance, but it also appears in G, in some instances this data may be incomplete or out of date. And so you have a procedural opportunity to challenge the fact that the database is presumed to be correct. And, indeed, one of Mr. Schoenberger's co-owners acted to take that challenge up within the requisite time periods. Mr. Schoenberger simply did not do so for these claimants, and therefore the claims are time-barred. The case is really that simple. Shouldn't the claims administrator, though, have given him this advice whenever he contacted? And, I mean, it may have already been too late. But he's asking for help, and he's having trouble, and it seems like they should have given him the information. You've got to go and submit this form, and you haven't done that. So, Judge Elrod, if you credit everything that's said, and, again, there's a lot of those, you know, referrals that are not of record. But if you credit everything that he says, he didn't take any steps to inquire of the claims administrator until after he got this phone call from a co-owner. He never took any steps during the six-month window. He took no for an answer at that time when the computer said that the parcels weren't eligible. But even, I mean, assuming arguendo that it would have been timely in June of 2014, there was nothing done. They didn't seem to respond to him very well, I guess. Am I wrong on that? I think you're wrong about that. Tell me why. Sure, because, you know, if you look at the motion that was filed with the district court, there are documents attached to that that make clear that Mr. Schoenberger spoke to someone from Brown Greer, who is a contractor for the claims administrator, and was told that the reason why your claim is being denied is you're outside the six-month window. At that point, it didn't matter that they didn't give him the instructions that, oh, you should have done this form. Right. Because in reality, you know, I don't think the answer would be any different if we were dealing with a pro se claimant, but we're dealing with, you know, a lawyer who both owns the claim and is a client for himself who owns part of the claims and some other individuals. And if you look at the settlement agreement, it's very clear that it puts you on notice that the claims administrator's database is not absolute gospel. It's not, you know, you cannot file and win a claim unless your claim is in this database. Let me ask you, if there's any information in the record, had he checked the box here on page 11 and said, here's my tax ID number, and my parcel falls within these areas, what would have happened? What would have happened, I think, is the same thing that probably happened again. We don't know what happened. I said, what does the record say? What would have happened probably is what happened with the PG claim as he represents it, the heirs of PG. They got paid. We don't know why they got paid. You said you don't know what they submitted. Because it's not in the record. But I'm saying if you credit what he's saying. What he's saying is that the heirs of PG told me that they submitted that form. They may have had a survey. We don't know. That's true. It's also possible that they may have had a survey, but that just provides another reason to deny the claim. I agree with Your Honor that if you have a $300,000 claim, that even a $100,000 survey, you had a procedural obligation under the settlement agreement to present evidence like that, and you failed to present it, your claim should be rejected as well. And Mr. Schoenberger says, I couldn't have figured out how much my claim was worth. That's not true at all. If you look at Exhibit 12A, it actually includes example calculations of what you would get paid under this program. And it does that in detail. There are three specific examples, and the main variable is how many acres do you have of land, and Mr. Schoenberger seems to be well in command of it. It talks about a map. Is everything in that map covered? Or is it like some skipping around? This is covered, but not this. So everything in the map is covered in some form, Your Honor, but there are particular zones that will get higher compensation levels, depending on whether there's direct evidence of oiling. Well, let me ask you, his property is clearly within the map. Your Honor, actually I don't know that based on off-record evidence. For purposes of argument, let's imagine that he's accurate. No, I don't want to say, I'm just asking, is it clear just from the township range description that his property is in the zone, the map? I don't know the answer to that question, Your Honor, to be honest. Do you concede that for argument purposes? No, I don't, and Mr. Schoenberger says in his reply brief that that was conceded, but we didn't concede it at all. He cites as an indication that we said that when they submitted the seven claims, five of them were denied and two of them were granted. That's not a concession. Here's my question. If it's true that from the record evidence you can see, based on at least the township range description of his property, that it is on the map, is he entitled to some compensation? It's just a question of how much. If the claim were timely filed, yes. Aside from the time. So if you can look at the township range and say, okay, I'm in that map, and I may be entitled to a dollar or a million dollars, but I get something. Yes, you would get something, and so that puts you on notice if you're the claimant, that if you get a computer response that says the database says you're not in it, then you need to take the next procedural steps to challenge it, and that's what Mr. Schoenberger did not do. And if there is a case to enforce the six-month bar rule, this case is it because nothing was done in that six-month period. The other thing I want to make sure that the court understands is that I have two of his claims, but one of his claims was definitely paid on, and that triggered the six-month time bar. At that time, you sign a release, the individual release that's an exhibit to the settlement agreement. If you look at Section 18 of that release, it specifically puts you on notice, again, beyond the general settlement agreement, that you have six months to file any follow-up claims. And so Mr. Schoenberger or his clients would have signed that release in order to get paid. And so there's no ability to say that somehow there was some obscure provision hiding in the settlement agreement somewhere. This six-month time bar was very prominent and very key in something that BP negotiated for. Is that in the record, his release? Well, there's— The release, is it in the record? It's not in the record, Your Honor. But the release, the individual release that everyone had to sign, it doesn't vary by party, is judicially noticeable. Certainly, that was going to be your alternative argument, that he loses anyway because six months certainly from that day, it seems like that would be in the record. The settlement agreement is in the record, Your Honor. So the exhibit with the individual release is in there and Section 18 is in there. What's not necessarily in there because this court denied Mr. Schoenberger's request to add his claims file to the record, that was denied. So that's not in the record. So if it's not in the record, we couldn't have put it in the record. But the text in Section 18 that says you have six months to file file-on claims, that is in the record for sure. He says there's lots of these claims with lots of errors and that many people are going to be coming in with these kinds of cases. Do you want to comment on that? Everybody's talking about things not in the record, so perhaps you want to comment on that as well. Sure, Your Honor. So, no, this is the first case I've ever seen like this. This is the first case I've ever heard of anything like this, and I base that not just on things that have reached this. This is clearly the first case like this that has reached this court. But I haven't seen anything like this reach the district court, and I haven't seen anything like this in the internal appeals process either. I think that this is a one-off situation in which you have a set of facts I think are compelling to say that the time bar blocks the claim. Let me run through for you, I think, just practically six things that I think Mr. Schoenberg should have done, and some of them have come up in oral argument already. So he could have read the wetlands instruction manual clearly, and he would have seen that submitting the form on page 11 is how you challenge something when you get a no answer from the computer database. He didn't do that. Second, he could have read Exhibit 12A of the settlement agreement, especially Section 1D3, and he would have seen all of the warnings that you can challenge the presumption there and that if you look at subsections F and G and so on that follow, warnings to any claimant that the database may have had errors, and so it's incumbent on you to come forward to challenge it under the processes of the settlement if you want to do that. Three, he could have called the program within the six-month window, and he would have been told about this form, I think. Somebody did call. He calls only after he gets the phone call from the co-owner. During the six-month time bar, which he was specifically on notice of when he signed the release and in general was on notice of because it's in the settlement agreement, he never acted during that six-month period at all. The court was exploring with him that he could have contacted his co-owners. He professes that he doesn't know who they were, but again, there's no record evidence of that, but it seems suspicious to me that they seem to know who he is, but he doesn't know who they are. Fifth, he could have read Section 4.4.8 and noticed the six-month window that's applicable in the settlement agreement by its own terms, and it doesn't seem like he did that. And then finally, as I noted, he could have read Section 18 of the individual release that he signed when he got paid on one of his wetlands claims, which references back to Section 4.4.8. And finally, I think really the dispositive fact about this, Your Honors, is that the heirs of PG appear to have taken all of these steps properly. Well, it's not dispositive because we don't know what they did. Well, Your Honor, Mr. Schoenberger argues that they got paid and that he concedes that they filed this form, and so if you filed that form, that is the proper procedure that was established under Exhibit 12A1D3 for challenging the presumption that the database was correct. He didn't take those procedural steps, and therefore his claim is time-barred by the six-month rule. Why is it relevant whether the other person got paid or not? I think that cuts both ways, and I don't understand why you're arguing that. Okay. Well, Your Honor, I don't think that it's necessary that you reach that. I personally find it important because of the fact that it's not as if this was an impossible Byzantine process that no one managed to navigate. Well, we don't know what would have happened had he filed a challenge. We just know that there was an opportunity to file a challenge. I think that's the best we can say. There was clearly an opportunity to file a challenge, and that's the essence of a procedural default, Your Honor. If those steps, if that exhaustion of remedies provided in the settlement agreement is not undertaken within the six-month time bar, then the six-month time bar blocks the claim. End of story. Thank you, counsel. Thank you. I kept waiting to hear counsel explain to the court how easy it would have been for me to get proof that this property was actually oiled. Never brought that up. It would not have been easy to get proof. Well, that's not what the form requires. Hold on just a minute. Let me just say. You cannot submit a claim, so your alternative is to submit the challenge form, the eligibility parcel form. It is draconian on what you have to provide to them. You have to provide a tax bill, which I already did. That's the point. That's what they denied. Or a survey. Not both. Or you have to provide proof of oil. And it was not practical to require that people provide proof of oil. Well, you don't know what they would have done had you gone in with your parcel designation again and your township range and said it's in the map. We just don't know. I don't know what they would have done if I had submitted it, obviously. No, I don't. Correct. What I do know is I did read the instructions, and the instructions were very detailed. That's why I didn't submit the claim form, because you said you cannot submit them. You have to go through the eligibility parcel challenge form, and if you're going to submit the eligibility parcel challenge form, you have to have a tax bill, which I had already utilized, and they had denied it. Well, we just don't know what would happen if you challenged it. But I'm just reading what the instructions told you to do. I mean, why would I have not done it? I mean, I tried to submit all seven of them, or proof of oil, which was just not practical to find proof of oil in 26 months on these very remote, inaccessible lands. These lands are very inaccessible. This is not like a country home or a beachfront home or something like that that you go to. But not submitting the form to put them on notice to double-check the tax form and check the property description. That's what the error is here. You assumed that they were already looking at your form, but they weren't, because this was the backup fail-safe system for them to look at the form and say, this is the tax thing, and we can go back. They had somebody double-checking that, and you could have submitted the same thing you already submitted, and there was a detailed instruction telling you that you were supposed to do that. That's the problem with this case. And that's all 2020 hindsight, to be honest, Judge. Yes, now that you know what you should have done, of course I would have done that. But you had the instructions to tell you what you were supposed to do. And I had already submitted the tax bill. I can't emphasize that enough. But you didn't submit it to the right people, the backup checker people. But how am I supposed to know that now? It doesn't tell you that. We told you to do that. If you disagree, then you submit the tax bill or your proof of oiling. And I'd already submitted the tax bill. But not to the right department of the people. But they don't tell you that. You just put it on the computer, and it had a database of certain that were already in there. But these folks would go back behind that to check on other ones that were not in the database. That's the whole purpose of having a backup system for the database. But I didn't know that. Well, but that's why they told you they had that. No, they say if you believe it was eligible, then submit this. And I'd submitted the tax bill already, and they told me it wasn't eligible. I mean, if I knew it was oiled, of course I would have done that. Naturally. Could you tell, does the record say one way or the other? I'm sorry, what, ma'am? Can you tell at least from the Township Range description you had that it fell within the map? I knew from the Township Range that it was in South Plaquemines Parish. And I knew that the other parcel was on the east bank of Plaquemines Parish. I did not know it had water frontage. In order to be eligible, you have to have, it's just a tiny sliver of land that runs along the coast like a half a mile. I didn't know that it had water frontage. I just knew it was in South Plaquemines Parish and East Plaquemines Parish. That's what I knew. And one of the ones in St. Bernard Parish, I had a photograph that shows it's totally surrounded by water and it was ineligible and remains ineligible. So, you know, I knew roughly where they were. I didn't know exactly where they were. And I had never set foot on these properties, and I doubt my dad had ever set foot on these properties because it's swamp. There was only one reason they ever bought them. It was hoping oil companies would be interested in them and pay them, you know, to drill on them. That's it. Thank you, counsel. We have your argument. I'm sorry. We have your argument. Thank you. Thank you.